Entered on Docket
June 12, 2012

GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

JUN 12 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

1    NOT FOR PUBLICATION

2

3    **UNITED STATES BANKRUPTCY APPELLATE PANEL**

4    **OF THE NINTH CIRCUIT**

| | |
|---|---|
| 5    In re: ) | BAP Nos.   NC-11-1392-KiJoJu |
| ) | NC-11-1540-KiJoJu |
| 6    PAUL DEN BESTE and MELODY DEN ) | (Related Appeals) |
| BESTE, ) | |
| 7    ) | Bk. No.   10-13558 |
| Debtors. ) | |
| 8    _____ ) | Adv. No.   11-1136 |
| ) | |
| 9    PAUL DEN BESTE, ) | |
| ) | |
| 10   Appellant, ) | |
| ) | |
| 11   v. ) | |
| ) | |
| 12   LYNN SEARLE, ) | |
| ) | |
| 13   Appellee. ) | |
| _____ ) | |
| 14   ) | BAP No. NC-11-1539-KiJoJu |
| PAUL DEN BESTE, ) | |
| 15   ) | |
| Appellant, ) | |
| 16   ) | |
| v. ) | **M E M O R A N D U M**[1] |
| 17   ) | |
| LUCIA FIORANI, ) | |
| 18   ) | |
| Appellee. ) | |
| 19   _____ ) | |

20          Argued and Submitted on May 17, 2012,
               at San Francisco, California
21
                   Filed - June 12, 2012
22
         Appeal from the United States Bankruptcy Court
23             for the Northern District of California

24   Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding

25   _____

26   _____

         [1]  This disposition is not appropriate for publication.
27   Although it may be cited for whatever persuasive value it may have
     (see Fed. R. App. P. 32.1), it has no precedential value.  See 9th
28   Cir. BAP Rule 8013-1.

```
1  Appearances:    James Patrick Chandler, Esq. argued for Appellant,
                    Paul Den Beste; Appellee Lynn Searle argued pro se;
2                   Lynn Searle, Esq. argued for Appellee, Lucia
                    Fiorani
3                   _____

4  Before: KIRSCHER, JOHNSON² and JURY, Bankruptcy Judges.

5

6       In these related appeals, chapter 7³ debtor Paul Den Beste

7  ("Den Beste") appeals three orders from the bankruptcy court:

8  (1) the order dismissing his adversary proceeding against

9  appellee, Lynn Searle ("Searle"), for her alleged violation of the

10 automatic stay (11-1392); (2) the order granting Searle's motion

11 for sanctions and denying Den Beste's counter-motion for sanctions

12 (11-1540); and (3) the order granting appellee, Lucia Fiorani's

13 ("Fiorani"), motion for relief from stay to prosecute an action

14 against Den Beste in state court (11-1539).  We AFFIRM the order

15 dismissing the adversary proceeding, AFFIRM the sanctions order,

16 and DISMISS as MOOT the order granting the motion for relief from

17 stay because Den Beste has since been denied a discharge.
```

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Facts common to all three appeals.**

```
20      The following prepetition facts are as alleged in a state

21 court complaint filed against Den Beste in June 2010 and in

22 Fiorani's motion for relief from stay.  We discuss these facts for

23 background purposes only.

24      _____

25      ²  Hon. Wayne E. Johnson, Bankruptcy Judge for the Central
   District of California, sitting by designation.
26

27      ³  Unless specified otherwise, all chapter, code, and rule
   references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
   the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The
28 Federal Rules of Civil Procedure are referred to as "Civil Rules."
```

-2-

1    Fiorani is approximately 65 years old and suffers from
2 developmental disabilities.  She is a "dependent adult" within the
3 meaning of the California Welfare and Institutions Code.  In
4 January 2000, Fiorani's parents executed the Fiorani Living Trust
5 ("Trust").  At that time, the Trust contained unencumbered real
6 property located in the Russian Hill neighborhood of
7 San Francisco, approximately $1.5 to $3 million in cash, and
8 significant tangible personal property.  Fiorani's parents were
9 the sole trustors and the initial co-trustees of the Trust.
10 Fiorani was the sole beneficiary of the "special needs" Trust
11 intended for her care during her lifetime.  Ronald Mazzaferro
12 ("Mazzaferro"), a cousin of Fiorani's, assisted in drafting the
13 terms of the Trust and was named as the Trust's successor trustee
14 and remainder beneficiary.  Edith Mazzaferri ("Edith"),[4] mother to
15 Mazzaferro (who changed his name from Mazzaferri), was named as
16 the second successor trustee.

17    Fiorani's parents died in March and April of 2000.  Upon
18 their deaths, Mazzaferro became trustee of the Trust.  At the time
19 of her parents' death in 2000 and up until 2009, Fiorani was
20 living on the streets and in homeless shelters in the San
21 Francisco area.  None of the Trust assets have ever been made
22 available to Fiorani or been expended for her benefit, including
23 the nearly $200,000 in rent proceeds Mazzaferro and his cohorts
24 have collected from the Russian Hill property since 2000.  Since
25 April 2000, Mazzaferro has made only one phone call and one
26 in-person attempt to help Fiorani off the streets.

27 ───────────────

28    [4]  We refer to Ms. Mazzaferri as "Edith" only to avoid any
confusion between her and her son, Ronald Mazzaferro.

-3-

1   Approximately one year after the death of Fiorani's parents,

2   Edith asked Mazzaferro about the status of Fiorani.  Mazzaferro

3   told Edith that Fiorani was well taken care of, that he was giving

4   her a monthly stipend and was buying her food and clothes, and

5   that Fiorani was receiving financial support from her former

6   husband.  Mazzaferro further told Edith that Fiorani wanted

7   nothing to do with the Russian Hill property.

8   Upon becoming trustee of the Trust, Mazzaferro began

9   converting the Trust assets to his own benefit.  In June 2004,

10  Fiorani, with assistance from her case worker, sent Mazzaferro a

11  letter requesting information about her parents' estate.  Fiorani

12  also left a telephone message for Mazzaferro, which was not

13  returned.  When she attempted to call him the next day, the phone

14  number had been disconnected.  Within days, Mazzaferro (in concert

15  with others) executed a deed of trust encumbering the Russian Hill

16  property as "Grantor or Trustor" of the Trust in the amount of

17  $2,980,000.  The deed of trust identified Den Beste as "Trustee"

18  of the Trust, and Lotchk Corporation, a Nevada corporation

19  established by Mazzaferro in March 2004, as the "Beneficiary" of

20  the agreement.  Den Beste has never been a trustee of the Trust,

21  nor has he ever had the right to execute anything on behalf of the

22  Trust.  In July 2004, Fiorani sent a letter to Mazzaferro

23  demanding that he provide her with an accounting for the Trust.

24  As of June 2010, Mazzaferro has failed to provide the requested

25  information.

26  In February 2005, Fiorani petitioned the probate court to

27  order Mazzaferro to prepare and file an accounting of the Trust

28  and for a settlement of the account.  In March 2005, Den Beste

-4-

executed a deed as "Trustee" of the Trust, granting the Russian Hill property to the Lotchk Corporation. The sale price is believed to have been $108,000, which may not have ever been paid. At that time, the county tax assessor valued the Russian Hill property at $1,621,000. Between May 2005 and January 2007, various court orders and warrants were issued for Mazzaferro to no avail.

In September 2009, Fiorani petitioned the state court to have Mazzaferro removed as trustee of the Trust. In November 2009, another party connected with Mazzaferro executed a deed granting the Russian Hill property to Great Sunset Ventures, Inc., a Wyoming corporation formed that month by Mazzaferro and his cohorts. As with the Lotchk Corporation, Great Sunset Ventures, Inc. is believed to be a sham corporation used to conceal the Trust's assets from Fiorani and the court.

Edith became trustee of the Trust in December 2009. In June 2010, on behalf of Fiorani and the Trust, Edith filed a complaint in state court (Case no. CGC-10-500462) against Mazzaferro, Den Beste, and others for multiple claims including breach of trust, breach of contract, breach of fiduciary duty, misrepresentation, conversion, and conspiracy (the "State Court Action"). Edith sought, inter alia, return of the Trust assets, an accounting, and compensatory and punitive damages. Den Beste was served with the summons and complaint on June 22, 2010. Den Beste, appearing pro se, moved to dismiss the State Court Action on July 19, 2010.

Den Beste and his wife filed a chapter 13 bankruptcy on September 15, 2010. The case was converted to chapter 7 on

-5-

1  October 22, 2010.  Den Beste did not list Edith or Fiorani or the
2  State Court Action in his schedules or statement of financial
3  affairs.  Den Beste also failed to inform the state court of the
4  bankruptcy filing or the chapter 7 trustee of the State Court
5  Action.  Despite the bankruptcy, Den Beste continued to defend the
6  State Court Action pro se, making 19 filings between July 2010 and
7  February 2011.[5]  In February 2011, Den Beste filed a complaint in
8  the U.S. District Court for the Northern District of California
9  against Edith for violating the automatic stay for pursuing the
10 State Court Action against him.

11      Fiorani subsequently retained attorney Searle to pursue
12 claims against Den Beste and others under California's elder and
13 dependent adult abuse statutes.  The facts of Fiorani's case are
14 based on essentially the same facts as Edith's complaint in the
15 State Court Action.  Before filing the abuse action, Searle sent a
16 letter to Den Beste and several other potential defendants on
17 April 18, 2011, seeking to settle the matter out of court (the
18 "Letter").  Fiorani sought return of the Russian Hill property,
19 $2 million, and her attorney's fees to date.

20 **B.    The stay violation adversary proceeding (Appeal 11-1392).**[6]

21      On April 28, 2011, Den Beste filed an adversary complaint
22 against Searle and Edith for violating the automatic stay.  In his
23 case against Edith, Den Beste "renewed" the same stay violation
24

25 _____

26      [5]  In 2007, Den Beste was declared a vexatious litigant in
   California and appears on the vexatious litigant list.  The same
27 is true for Mazzaferro as of 1996.

28      [6]  Although Edith was a defendant in the stay violation
   adversary proceeding, she is not a party to this appeal.

                              -6-

claim he alleged against her in the U.S. District Court.  As to
Searle, Den Beste claimed the Letter violated the automatic stay.
In his prayer for relief, Den Beste requested $100,000 from each
defendant, $10,000 per day for every day they continued to violate
the stay, and $500,000 for emotional pain and suffering.

On May 27, 2011, Searle moved to dismiss the adversary
complaint for failing to state a claim for relief under Civil
Rule 12(b)(6), made applicable by Rule 7012.  Searle denied
violating the stay, stating in her supporting declaration that she
was unaware of the bankruptcy until she received Den Beste's
summons and complaint on May 2, 2011.  Searle noted that neither
her nor Fiorani's (nor Edith's) name appeared on any of
Den Beste's bankruptcy papers or on any notice issued since his
bankruptcy filing, and further noted that Den Beste participated
in the State Court Action for five months after he filed
bankruptcy without ever notifying Edith that a bankruptcy was
pending.  In short, Searle contended: (1) the Letter did not
constitute conduct prohibited under § 362(a); or (2) because she
and Fiorani had no knowledge of the bankruptcy, any potential stay
violation could not have been "willful" under § 362(k) and
Den Beste's complaint failed to establish any "willful" violation.
Attached to Searle's motion was a request for judicial notice,
which included copies of court documents she alleged showed
Den Beste's postpetition involvement in the State Court Action and
his knowledge that Edith and Fiorani were creditors when he filed
bankruptcy.  A hearing on Searle's motion was set for June 24,
2011.

Before the hearing on Searle's motion to dismiss, Den Beste

-7-

filed a document on June 17, 2011, which he describes as an
"amended complaint".  In that document he increased his demands to
$1 million from each defendant, $20,000 per day for every day they
continued to violate the automatic stay, and $1 million for
emotion pain and suffering.  Attached to the "amended complaint"
was a request for judicial notice, which included a copy of a Case
Management Statement ("Statement") filed by Edith's counsel in the
State Court Action and dated January 26, 2011.  The Statement
acknowledges that "Den Beste has filed for Bankruptcy" and
disclosed that "PTR-05-286962" (Fiorani's/Searle's probate case)
was a "related case."  Den Beste alleged that because Searle "has
been involved with in [sic] the San Francisco courts," she must
have known about the Statement and Den Beste's bankruptcy, at
least by January 26, 2011, and thus she committed perjury when she
claimed ignorance of his bankruptcy.  Searle has never represented
Edith or any other party in the State Court Action.[7]

The bankruptcy court orally granted Searle's motion to
dismiss at the hearing on June 24, 2011.  Den Beste failed to
appear.  Although Den Beste failed to provide the transcript on
appeal, other evidence available to us indicates the court
announced at the hearing its decision to convert Searle's motion
to one for summary judgment under Civil Rule 56, made applicable
by Rule 7056.  A judgment dismissing the adversary proceeding as

---

[7]  Also on June 17, 2011, Den Beste filed an objection to the
scheduled June 24 hearing on Searle's motion to dismiss because he
believed it was improperly scheduled and defectively noticed.
Den Beste alleged that Searle committed mail fraud and did not
provide the required 28-day notice for the hearing under Local
Rule 7007-1(a).  It is unknown how the bankruptcy court treated
the objection, but Den Beste does not raise this issue on appeal.

-8-

to Searle, with prejudice, was entered on June 30, 2011
("Dismissal Order"). Den Beste timely appealed.[8]

**C.    The sanctions motions (Appeal 11-1540).**

Searle moved for sanctions against Den Beste under Civil
Rule 11, made applicable by Rule 9011, on July 28, 2011. Searle
contended that Den Beste's adversary complaint against her for
violating the automatic stay was filed in bad faith for an
improper purpose and without evidentiary support. Searle further
alleged that Den Beste's tactic of suing her personally, as
opposed to her client Fiorani, had been utilized by his cohort
Mazzaferro in the past with Edith's counsel, and was done
intentionally to create a conflict of interest between her and
Fiorani in order to deprive Fiorani of counsel. Searle requested
a sanction of $18,697 in attorney's fees to compensate her for

---

[8]    Although Searle had been dismissed from the adversary
proceeding on June 30, 2011, defendant Edith had not. Eventually,
the parties were ordered to attend a new scheduling conference on
October 17, 2011. Edith was ordered to file an answer, but,
before she could do so, Den Beste voluntarily dismissed her
without prejudice on October 31, 2011.
    Generally, dismissal of an entire action, even without
prejudice, is a final order. Nascimento v. Dummer, 508 F.3d 905,
910 n.4 (9th Cir. 2007). See also United States v. Wallace &
Tiernan Co., 336 U.S. 793, 794 n. 1 (1949)("That the dismissal was
without prejudice to filing another suit does not make the cause
unappealable, for denial of relief and dismissal of the case ended
this suit so far as the District Court was concerned."); Thompson
v. Potashnick Constr. Co., 812 F.2d 574, 576 (9th Cir. 1987)
("That the dismissal is without prejudice and the litigation may
be renewed does not affect its appealability . . . ."). No actual
"order" is on the docket dismissing the action as to Edith.
However, in the case of dismissal under Civil Rule 41(a), no court
order is required. See Commercial Space Mgmt. Co., Inc. v. Boeing
Co., Inc., 193 F.3d 1074, 1078 (9th Cir. 1999)("Thus, it is beyond
debate that a dismissal under Rule 41(a)(1) is effective on
filing, no court order is required, [and] the parties are left as
though no action had been brought . . . .").
    Therefore, we conclude that all claims against all parties
have been resolved and the Dismissal Order is a final appealable
order.

-9-

time expended defending the frivolous complaint.  Prior to filing the sanctions motion, Searle complied with the 21-day safe harbor provision of Rule 9011(c)(1)(A) by serving Den Beste with her moving papers on or around June 3, 2011.

Den Beste opposed the sanctions motion, contending the bankruptcy court lacked jurisdiction to rule on it because the Dismissal Order had been appealed.  Den Beste further argued that attorneys appearing pro se are not entitled to attorney's fees under California law.  Den Beste filed a "counter-motion" for sanctions under § 105 against Searle for filing what he contended was a frivolous sanctions motion.  The counter-motion also requested a criminal referral for Searle to the U.S. District Court.  Unlike Searle, Den Beste did not comply with the 21-day safe harbor provision of Rule 9011(c)(1)(A).

The bankruptcy court held a hearing on both sanctions motions on September 2, 2011.  Den Beste appeared through counsel. Counsel admitted that Den Beste's counter-motion did not comply with the 21-day safe harbor provision of Rule 9011.  Hr'g Tr. (Sept. 2, 2011) at 5:16-20.  The bankruptcy court took the matter under advisement.  Id. at 6:16-17.

A Memorandum on the sanctions motions was issued on September 28, 2011.  The bankruptcy court initially noted that Den Beste had "incredibly" failed to schedule Edith or Searle as creditors even though the State Court Action was pending against him, which he also failed to disclose, and Searle had represented

///

///

///

-10-

a plaintiff in state court litigation against him.[9]  In discussing

the procedural history of the adversary complaint and Searle's

motion to dismiss, the court noted:

> Den Beste responded to Searle's motion to dismiss by
> filing an amended complaint and a 'request for judicial
> notice.'  Full of unseemly invective, these documents
> failed to create a triable issue of fact that Searle knew
> about the automatic stay.  The court accordingly treated
> Searle's motion as a motion for summary judgment and
> granted it.

Mem. 2:9-12 (Sept. 28, 2011).  The court "ha[d] no difficulty

finding that Den Beste's complaint against Searle was entirely

unwarranted, both factually and legally, and was commenced against

Searle solely for the purposes of harassment."  Id. at 2:15-17.

The court further found Searle had complied with the 21-day safe

harbor provision of Rule 9011(c)(1)(A), and that Den Beste's "vile

amended complaint was not an appropriate correction" to cure his

sanctionable conduct.  Id. at 2:17-21.  While the court agreed

monetary sanctions were in order, it determined that Searle, an

attorney representing herself, was not entitled to recover

attorney's fees as a sanction.  However, the court did issue an

order requiring Den Beste to seek prior permission before

commencing any more actions against her.  Because Searle's motion

was well founded, Den Beste's counter-motion was denied.

Concurrently with its Memorandum, the bankruptcy court

entered an order granting Searle's motion for sanctions and

denying Den Beste's counter-motion (the "Sanctions Order").  For a

period of three years, Den Beste is prohibited from commencing any

---

[9]  We assume the court meant the probate action Fiorani had
pending in state court as her abuse claims against Den Beste had
not yet been filed.

-11-

action, proceeding, or motion against Searle in any court without a prior order of the bankruptcy court allowing it (with the exception of appeals from the adversary proceeding).  Den Beste timely appealed.[10]

**D.   Fiorani's motion for relief from stay (Appeal 11-1539).**

On September 8, 2011, Fiorani moved for relief from stay under § 362(d)(1) to file her abuse action against Den Beste (and several other non-debtor defendants) in state court and to permit joinder of that action with Edith's pending State Court Action ("Stay Relief Motion").  Fiorani argued that state court was a more suitable forum to hear her abuse claims, particularly since many of the defendants were non-debtors.  Fiorani conceded the stay would remain in effect as to enforcement of any resulting judgment against Den Beste or the bankruptcy estate, but she wished to retain her right to file a proof of claim and/or a nondischargeability complaint.  Attached to Fiorani's motion was a declaration from Searle and several exhibits, including copies of the complaint filed in the State Court Action (minus some redacted pages), the subject deeds and deed of trust for the Russian Hill

---

[10]   The bankruptcy court also stated in its Memorandum that it would commence its own sanction proceeding against Den Beste.  On September 26, 2011, the court issued an order to show cause for why Den Beste should not be sanctioned for filing "materially false schedules and statement of financial affairs," and for filing, without just cause, the adversary complaint against Searle for violating the automatic stay.  (Case no. 10-13558, dkt. no. 102).  A hearing was held on November 4, 2011.  On November 14, 2011, the bankruptcy court entered an order sanctioning Den Beste $2,500 for his frivolous suit against Searle.  The BAP can take judicial notice of items from the bankruptcy court record.  <u>Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)</u>, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-12-

1  property, and the Letter.[11]

2      Den Beste filed his opposition to the Stay Relief Motion on
3  September 21, 2011.  His attorney filed a virtually identical
4  opposition on that same date.  Both oppositions asserted multiple
5  reasons for why Fiorani was not entitled to relief, including that
6  she lacked standing as a "party in interest" to obtain relief from
7  stay.

8      A hearing on the Stay Relief Motion occurred on September 22,
9  2011.  Counsel for Fiorani admitted to not filing a proof of claim
10  or a nondischargeability action against Den Beste.  The bankruptcy
11  court informed Fiorani's counsel that if the deadline for filing a
12  nondischargeability action against Den Beste under § 523(a)(6) had
13  passed (unless Fiorani did not know about the bankruptcy), then
14  her only chance to prevail was if the court granted a pending
15  objection to Den Beste's discharge.[12]  Hr'g Tr. (Sept. 22, 2011) at
16  5:6-18.  Counsel for Den Beste noted that the deadline (extended)
17  for filing a nondischargeability action expired on July 6, 2011.
18  Id. at 8:3-4.  After hearing argument from the parties, the
19  bankruptcy court granted Fiorani's motion on a limited basis.

20      In the order entered on September 29, 2011 ("Stay Relief
21  Order"), the bankruptcy court allowed Fiorani to file her abuse
22  action in state court, but the action was stayed for 90 days as to

23

24  _____

25      [11]  The chapter 7 trustee filed a limited objection to the
    Stay Relief Motion contending that Fiorani should first file a
26  proof of claim before pursuing any litigation against Den Beste
    and, to the extent she was seeking nondischargeability of her
27  debt, Fiorani had to comply with the requirements of § 523.

28      [12]  A different party had filed a complaint objecting to
    discharge, which was set for trial.

-13-

Den Beste, pending the outcome of the objection to his discharge.
The Stay Relief Order further ordered that no judgment against
Den Beste could be enforced until the objection to discharge was
decided or when the bankruptcy court determined dischargeability
of any judgment.  Finally, all activity in the abuse action had to
cease if Den Beste received a discharge and the bankruptcy court
had made no determination that Fiorani's claims were excepted from
discharge.  Den Beste timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C.
§§ 157(b)(2)(A) and (G) and 1334.  We have jurisdiction over
appeals 11-1392 and 11-1540 under 28 U.S.C. § 158.  We address our
jurisdiction over appeal 11-1539 below.

## III. ISSUES

1.  Did the bankruptcy court err in dismissing the adversary
proceeding against Searle?
2.  Did the bankruptcy court abuse its discretion in granting
Searle's motion for sanctions and denying Den Beste's counter-
motion for sanctions?
3.  Have events subsequent to entry of the Stay Relief Order
rendered the appeal moot?  If not, did the bankruptcy court abuse
its discretion in granting the Stay Relief Motion?

## IV. STANDARDS OF REVIEW

We review orders granting summary judgment de novo.  Bamonte
v. City of Mesa, 598 F.3d 1217, 1220 (9th Cir. 2010).  The
bankruptcy court's application of the rules of procedure
is reviewed de novo.  Ruvacalba v. Munoz (In re Munoz), 287 B.R.
546, 550 (9th Cir. BAP 2002).  Likewise, whether a party's due

-14-

process rights were violated is a question of law we review de

novo.  <u>Miller v. Cardinale (In re Deville)</u>, 280 B.R. 483, 492 (9th

Cir. BAP 2002).  Mootness is also a question of law reviewed de

novo.  <u>Suter v. Goedert</u>, 504 F.3d 982, 985 (9th Cir. 2007).

We review all aspects of an award of sanctions for an abuse

of discretion.  <u>Price v. Lehtinen (In re Lehtinen)</u>, 332 B.R. 404,

411 (9th Cir. BAP 2005), <u>aff'd</u> 564 F.3d 1052 (9th Cir. 2009);

<u>In re Nguyen</u>, 447 B.R. 268, 276 (9th Cir. BAP 2011)(en banc).  The

bankruptcy court's decision to grant relief from stay is also

reviewed for abuse of discretion.  <u>Kronemyer v. Am. Contractors</u>

<u>Indem. Co. (In re Kronemyer)</u>, 405 B.R. 915, 918 (9th Cir. BAP

2009).  To determine whether the bankruptcy court abused its

discretion, we conduct a two-step inquiry: (1) we review de novo

whether the bankruptcy court "identified the correct legal rule to

apply to the relief requested" and (2) if it did, whether the

bankruptcy court's application of the legal standard was

illogical, implausible or "without support in inferences that may

be drawn from the facts in the record."  <u>United States v. Hinkson,</u>

585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

### V. DISCUSSION

**A.    The bankruptcy court did not abuse its discretion when it dismissed the adversary proceeding against Searle (Appeal 11-1392).**

**1.    Governing law.**

The filing of a bankruptcy petition automatically stays "the

commencement . . . of a judicial . . . action or proceeding

against the debtor that was or could have been commenced before

the commencement of the [bankruptcy] case . . ." and "any act to

collect, assess, or recover a claim against the debtor that arose

-15-

1  before the commencement of the [bankruptcy] case . . . ."
2  Section 362(a)(1) and (a)(6).

3      Section 362(k) permits sanctions for willful violations of
4  the automatic stay under § 362(a).  "A willful violation is
5  satisfied if a party knew of the automatic stay, and its actions
6  in violation of the stay were intentional."  Eskanos & Adler, P.C.
7  v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002)(citing Pinkstaff
8  v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir.
9  1992)).  Once a creditor has knowledge of the bankruptcy, it is
10  deemed to have knowledge of the automatic stay.  Ramirez v.
11  Fuselier (In re Ramirez), 183 B.R. 583, 589 (9th Cir. BAP 1995).

12      **2.  Analysis.**

13      Den Beste raises two arguments on appeal.  He first contends
14  the Dismissal Order could not have effectively dismissed the
15  adversary proceeding against Searle because her motion to dismiss
16  and the Dismissal Order addressed only his original complaint and
17  not his "amended complaint" that was filed after Searle's motion,
18  and which he believes became the operative complaint.[13]  Searle
19  contends the bankruptcy court considered the "amended complaint"
20  and that the Dismissal Order disposed of both complaints.

21      Looking only at the Dismissal Order, it is not entirely clear
22  whether the bankruptcy court considered and dismissed both

23  _____

24      [13]  Under Civil Rule 15(a), made applicable by Rule 7015, a
    party may amend a pleading once as a matter of course before a
    responsive pleading is served.  A Civil Rule 12(b)(6) motion to
25  dismiss is not such a responsive pleading as to cut off a
    plaintiff's right to amend once, without leave of court.  CRST Van
26  Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1104, n.3
    (9th Cir. 2007).  Because Searle did not file an answer but opted
27  to file a motion to dismiss, no responsive pleading prevented
    Den Beste from filing his "amended complaint" without seeking
28  leave of the bankruptcy court.  Id.

-16-

complaints (i.e., "it is ORDERED, ADJUDGED and DECREED that plaintiff take nothing by his <u>complaint</u> and that this adversary proceeding is DISMISSED as to said defendant, with prejudice.") (emphasis added).  However, the court's subsequent Memorandum on the sanctions motions indicates it was fully aware of Den Beste's "amended complaint" at the time it ruled on Searle's motion to dismiss, that it considered it, and, in the court's opinion, it failed to establish the material fact that Searle knew about the bankruptcy when she sent the Letter.

In our review of the record, we conclude Den Beste's original complaint failed to meet the pleading standard for Civil Rule 8 set forth in <u>Iqbal</u> and <u>Twombly</u> and was subject to dismissal even under Civil Rule 12(b)(6).  "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Den Beste failed to set forth a <u>single</u> fact showing that Searle knew about the bankruptcy when she sent him the Letter.

Den Beste's "amended complaint" fares no better.  We construe it as an opposition to Searle's motion to dismiss rather than a proper complaint under Civil Rule 8.  <u>See</u> <u>Rubenstein v. United States</u>, 227 F.2d 638, 642 (10th Cir. 1955)("There is no controlling magic in the title, name, or description which a party litigant gives to his pleading.  The substance rather than the name or denomination given to a pleading is the yardstick for determining its character and sufficiency.").

The content of the "amended complaint" clearly responds to

Case: 10-13558    Doc# 176    Filed: 06/12/12    Entered: 06/12/12 16:19:08    Page 17 of 30

the motion to dismiss.  Vast portions of the "amended complaint"
attack Searle's motion to dismiss. The document repeatedly argues
that the motion to dismiss has false statements and other defects.
In addition, paragraphs 14 and 15 of the "amended complaint"
assert that the motion to dismiss was served improperly.
Paragraph 16 accuses Searle of mail fraud in connection with
serving the motion to dismiss.  The vast majority of the content
of the "amended complaint" constitutes legal argument in
opposition to the motion to dismiss.  The document is an
opposition brief to the motion to dismiss, it is not an amended
complaint.

However, even if we construed it as an amended complaint,
Den Beste still loses.  He alleged that, based on the Statement
filed by Edith's counsel in the State Court Action in January
2011, which states that "Paul Den Beste has filed for Bankruptcy"
and that "PTR-05-286962" (Fiorani's/Searle's probate case) is a
"related case," Searle knew about the bankruptcy when she sent the
Letter in April 2011.  In other words, because Edith's counsel
knew about the bankruptcy and referenced in the Statement the
related probate case, then Searle necessarily knew of the
bankruptcy.  On an evidentiary note, all Den Beste offered to
support his claim was a copy of the Statement and his conclusory
argument.  The copy of the Statement only proves that it was
filed, and his conclusory argument about Searle's knowledge is not
a sufficient allegation.  <u>British Airways Bd. v. Boeing Co.</u>,
585 F.2d 946, 952 (9th Cir. 1978)("Legal memoranda and oral
argument are not evidence, and they cannot by themselves create a
factual dispute sufficient to defeat a summary judgment

-18-

motion . . . .").  In contrast, Searle submitted a declaration
stating that she had no knowledge of the bankruptcy until she
received Den Beste's summons and complaint in May 2011, a material
fact Den Beste failed to rebut.[14]

Finally, any suggestion by Den Beste that the court should
not have proceeded with a hearing regarding the motion to dismiss
the original complaint due to the filing of an alleged amended
complaint was not presented to the bankruptcy court and,
therefore, should not be considered on appeal.  On June 17, 2011,
Den Beste filed the "amended complaint" and another document
entitled "Plaintiff's Objection To The Court Holding The Below
Procedurally and Defectively Scheduled and Procedurally and
Defectively Noticed Hearing."  Both documents make numerous
arguments as to why the hearing regarding the motion to dismiss
should not proceed but neither document asserts that the motion to
dismiss has been mooted by the filing of the amended complaint.
Therefore, Den Beste waived this argument.

Next, Den Beste contends that the bankruptcy court failed to
provide him with proper notice that it intended to convert

---

[14]  We further observe that nowhere in Den Beste's objection
to the dismissal hearing filed on June 17, 2011, does he object to
the hearing going forward based on the filing of the "amended
complaint".  If Den Beste truly believed the "amended complaint"
"mooted" the need for the dismissal hearing, it seems he would
have mentioned this in his objection.  We also agree that the
bankruptcy court could have construed Den Beste's "amended
complaint" as an opposition to the motion to dismiss due to its
defective nature.  Therefore, we believe it was reasonable for the
bankruptcy court to go forward with the dismissal hearing and
decide the matter as a summary judgment motion based on the
evidence it had before it.  At oral argument before this Panel,
counsel for Den Beste acknowledged that the "amended complaint"
could have been considered a response to Searle's motion to
dismiss.

-19-

1   Searle's motion to dismiss to one for summary judgment, and thus
2   denied him the right to defend it.  We disagree.

3      When a motion to dismiss is converted to a motion for summary
4   judgment, the converted motion is treated entirely as a motion for
5   summary judgment.  Although a motion to dismiss under Civil
6   Rule 12(b)(6) presumes that the general allegations of the
7   complaint embrace those specific facts necessary to support the
8   claim, a motion for summary judgment under Civil Rule 56 does not
9   make such a presumption, but rather requires the nonmovant to come
10  forward with all the evidence necessary to establish a genuine
11  issue of material fact which, if proved, would entitle the
12  nonmovant to relief as a matter of law.  <u>Lujan v. Nat'l Wildlife</u>
13  <u>Fed'n</u>, 497 U.S. 871 (1990).

14     If, on a motion under Civil Rule 12(b)(6), matters outside
15  the pleadings are presented to and not excluded by the court, the
16  motion must be treated as one for summary judgment under Civil
17  Rule 56, and all parties must be given a reasonable opportunity to
18  present all the material that is pertinent to the motion.  Civil
19  Rule 12(d).  The Ninth Circuit does not require strict adherence
20  to formal notice requirements.  Rather, the reviewing court
21  examines the record in each case to determine whether the party
22  against whom summary judgment was entered was fairly apprised that
23  the court would look beyond the pleadings and treat the motion to
24  dismiss as one for summary judgment.  <u>Olsen v. Idaho St. Bd. of</u>
25  <u>Med.</u>, 363 F.3d 916, 922 (9th Cir. 2004)(quotation marks and
26  citations omitted).

27     A party is "fairly apprised" that the court will in fact be
28  deciding a summary judgment motion if that party submits matters

-20-

outside the pleadings to the judge and invites consideration of them. <u>Cunningham v. Rothery (In re Rothery)</u>, 143 F.3d 546, 549 (9th Cir. 1998). Although Den Beste submitted documents outside the pleadings (particularly, the declaration from Mazzaferro), this notice standard may apply only to represented parties. <u>See San Pedro Hotel Co. v. City of L.A.</u>, 159 F.3d 470, 477 (9th Cir. 1998)("'A represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment'")(quoting <u>Grove v. Mead School Dist. No. 354</u>, 753 F.2d 1528, 1533 (9th Cir. 1985)).

As for pro se plaintiffs, when the trial court treats a motion to dismiss as one for summary judgment, "it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings, and must give the plaintiff 'a reasonable opportunity to present all material made pertinent to such a motion by [Civil] Rule 56.'" <u>Allen v. Figueroa</u>, 1995 WL 314704, at *6 (9th Cir. 1995)(quoting <u>Garaux v. Pulley</u>, 739 F.2d 437, 438-39 (9th Cir. 1984)). "This is consistent with the 'rule of liberal construction of pleadings presented by pro se litigants, particularly when a motion to dismiss under [Civil] Rule 12(b)(6) is being considered.'" <u>Id.</u> (quoting <u>Garaux</u>, 739 F.2d at 439). Thus, did the bankruptcy court inform Den Beste that it was considering more than the pleadings and provide him with a reasonable opportunity to present all the material that was pertinent to the motion?

Den Beste failed to appear, without excuse, at the hearing on

-21-

Searle's motion to dismiss, and he failed to include the transcript of that hearing in his excerpts of record.  Therefore, he cannot attest to what happened there.  Searle asserts that the bankruptcy court did in fact notify the parties at the hearing that it was treating the motion as one for summary judgment, and, had Den Beste been present, the court would likely have deferred its ruling and given him a chance to present any additional evidence he might have had.  Given Searle's statement and the lack of the required transcript, we can presume the court announced to the parties its reasons for converting the motion to one for summary judgment.  Cogliano v. Anderson (In re Cogliano), 355 B.R. 792, 803 (9th Cir. BAP 2006).  And, had Den Beste appeared, it is quite possible the court would have continued the matter to allow him an opportunity to present any further evidence in support of his case.

    We also note that Den Beste is not your typical "pro se" litigant, as he occasionally appears by counsel.  For example, Den Beste and his counsel filed nearly identical oppositions to the Stay Relief Motion.  Counsel appeared for Den Beste at that hearing and at the hearing on the sanctions motions.  Moreover, Den Beste, a state court vexatious litigant involved in a multitude of civil litigation, is familiar with procedural rules and clearly knows his way around the court.  Why Den Beste chose not to defend his case is unknown, but we cannot reward his conduct with a second opportunity to do so.  He fails to even assert on appeal what evidence he could submit, if given the opportunity, that would establish a genuine issue of material fact

-22-

1  which, if proved, would entitle him to relief as a matter of law.[15]

2      Accordingly, on this record, we conclude the bankruptcy court

3  provided Den Beste with adequate notice that it was treating

4  Searle's motion to dismiss as a motion for summary judgment, and

5  it did not err when it granted the motion dismissing the adversary

6  proceeding as to Searle.

7  **B.    The bankruptcy court did not abuse its discretion in entering
        the Sanctions Order (Appeal 11-1540).**

8

9      Den Beste raises essentially two arguments on appeal: (1) the

10 bankruptcy court lacked jurisdiction to hear Searle's sanctions

11 motion because the Dismissal Order had been appealed; and

12 (2) Den Beste's due process rights were violated because he failed

13 to receive notice that the court was considering an injunction as

14 a sanction.  Den Beste fails to cite any authority in support of

15 either of his arguments and we disagree.

16     Civil Rule 11(c)(1)(A), made applicable by Rule 9011,

17 provides that "sanctions under this rule shall be made separately

18 from other motions or requests and shall describe the specific

19

20     [15]   We note that in <u>Garaux v. Pulley</u>, supra, the Ninth Circuit
   held that where the nonmoving party is appearing pro se, the
21 notice requirements of Civil Rule 56(c) must be strictly adhered
   to when a motion to dismiss under Civil Rule 12(b)(6) is converted
22 into one for summary judgment.  At that time (1984), Civil Rule
   56(c) required that the nonmoving party be given at least 10 days
23 notice before the time fixed for the hearing on a summary judgment
   motion.  However, the 2010 amendments to Civil Rule 56 have
24 eliminated any reference to time or notice, other than "reasonable
   time to respond" in subsection (f).  Furthermore, <u>Garaux</u> involved
25 a pro se prisoner, to whom the Ninth Circuit gives special
   treatment.  <u>See</u> <u>Lofton v. U.S. Bureau of Prisons</u>, 999 F.2d 543, at
26 *2 (9th Cir. 1993)(unpublished table case)(strict compliance with
   the Rule 56(c) 10-day notice provision is required when the
27 litigant is a "pro se prisoner")(citing <u>Garaux</u>, 739 F.2d at
   439-40).  Therefore, <u>Garaux</u> may not apply to this case or, if it
28 does, it may no longer be good law.

-23-

conduct alleged to violate subdivision (b)." This Rule also
provides a mandatory 21-day safe harbor provision, during which
the movant must serve its motion on the opposing party and allow
the opposing party 21 days to retract the offending paper, claim,
defense, contention, allegation or denial before filing a motion
for sanctions with the Court. Id. Den Beste does not dispute the
bankruptcy court's finding that Searle complied with the safe
harbor provision.

Rule 9011 applies to pro se litigants and debtors and
subjects them to the same standards as an attorney. Bus. Guides
v. Chromatic Commc'ns Ent., 498 U.S. 533 (1991)(interpreting Civil
Rule 11, which is substantially similar to Rule 9011). Under
Rule 9011(c), if the bankruptcy court determines that an attorney
or pro se party has filed a frivolous paper or has filed a paper
for an improper purpose as set forth under Rule 9011(b)(1) or
(b)(2), it may impose an appropriate sanction. In re Brooks-
Hamilton, 400 B.R. 238, 249 (9th Cir. BAP 2009). The sanction "is
limited to what is sufficient to deter repetition of such
conduct." Rule 9011(c)(2). The sanction may consist of
"directives of a nonmonetary nature." Id.

Den Beste incorrectly argues the bankruptcy court lost
jurisdiction to hear the sanctions motion because he appealed the
Dismissal Order. Generally, the timely filing of a notice of
appeal divests the trial court of jurisdiction. Rains v. Flinn
(In re Rains), 428 F.3d 893, 903 (9th Cir. 2005). The rule of
exclusive appellate jurisdiction, however, is not absolute. Id.
at 904; Hill & Sanford, LLP v. Mirzai (In re Mirzai), 236 B.R. 8,
10 (9th Cir. BAP 1999)(collecting cases). While the trial court

-24-

cannot alter or expand the status quo of an appealed judgment, it can "correct clerical errors, take steps to maintain the status quo, take steps that aid in the appeal, award attorney's fees, impose sanctions, and proceed with matters not involved in the appeal." In re Mirzai, 236 B.R. at 10 (citing Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1403 (9th Cir. 1988)); Mahone v. Ray, 326 F.3d 1176, 1180 (11th Cir. 2003)(citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990) and holding that Civil Rule 11 motions raise issues collateral to the merits of an appeal and may be filed even after trial court no longer has jurisdiction over the substance of the case).

We also conclude the bankruptcy court provided Den Beste the process that was due.  The bankruptcy court must afford a party subject to Rule 9011 sanctions procedural protections before levying sanctions.  See Hudson v. Moore Bus. Forms, Inc., 898 F.2d 684, 686 (9th Cir. 1990)(discussing Civil Rule 11).  The necessary protections are notice and an opportunity to respond.  Id.  See In re Deville, 280 B.R. at 496 ("The fundamental question related to due process is whether Appellants received any type of notice that was reasonably calculated under all the circumstances to apprise them of the pendency of the action and afford them an opportunity to present their objections.")(citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950)).  It is undisputed that Searle complied with the safe harbor provision of Rule 9011.  Furthermore, her motion specified the authority for the sanction, as well as the sanctionable conduct.  Den Beste received notice of the sanctions motion when filed, he filed an opposition thereto, and he filed a counter-motion for sanctions.  The bankruptcy court

-25-

1  held a full sanctions hearing at which Den Beste was represented
2  by counsel.  The court then considered the merits of both
3  sanctions motions and determined that Searle was entitled to
4  sanctions due to Den Beste's improper and harassing adversary
5  complaint.  Accordingly, the requirements of due process were
6  satisfied.

7       The fact the court chose a sanction different from the one
8  Searle requested does not equate to a violation of due process.
9  Sanctions under Rule 9011 are to be deterrent in nature.  <u>Smyth v.</u>
10 <u>City of Oakland (In re Brooks-Hamilton)</u>, 329 B.R. 270, 283 (9th
11 Cir. BAP 2005), <u>aff'd in part, rev'd in part on other grounds, and</u>
12 <u>remanded</u>, 271 Fed. Appx. 654 (9th Cir. 2008)(per curiam).  The
13 principal goal of Rule 9011 is to deter baseless filings, and the
14 bankruptcy court has broad discretion in determining what sanction
15 to impose for violating Rule 9011.  <u>Id.</u>  For a debtor like
16 Den Beste, who has been declared a vexatious litigant by
17 California courts, an injunction preventing him from filing
18 further frivolous actions against Searle was a reasonable and
19 appropriate sanction well within the bankruptcy court's
20 discretion.  Indeed, the bankruptcy court tailored the remedy to
21 the offense and the offending party.  The bankruptcy court did not
22 absolutely prohibit Den Best from filing any lawsuit but only
23 required Den Beste - a vexatious litigant - to obtain court
24 permission before doing so. Thus, despite Den Beste's arguments to
25 the contrary, the bankruptcy court was not required to provide him
26 with additional notice that it was choosing a nonmonetary
27 ///
28 ///

-26-

1  sanction.[16]

2     We also reject Den Beste's contention that his counter-motion

3  for Rule 9011 sanctions should have been granted.  Den Beste

4  argues that because Searle knew she could not seek the sanction of

5  attorney's fees, and because the fees were not awarded, it must be

6  assumed that his grounds for sanctions were valid, and therefore

7  sanctions against Searle were mandatory.

8     First, Den Beste, unlike Searle, did not comply with the

9  21-day safe harbor provision of Rule 9011(c)(1)(A).

10     Second, we are not entirely convinced that Searle was not

11  entitled to attorney's fees.  The bankruptcy court relied on

12  Massengale v. Ray, 267 F.3d 1298, 1302-03 (11th Cir. 2001) to

13  conclude that a pro se litigant is not entitled to attorney's fees

14  under Rule 9011.  While Massengale may be persuasive, we could not

15  locate any controlling Ninth Circuit authority dictating that

16  result.  Nevertheless, Searle has not cross-appealed the

17  bankruptcy court's ruling.[17]

18

_____

19     [16]  Den Beste complains that a "second" sanctions motion was
   filed requesting the injunction (as opposed to attorney's fees)
20  and that he was not served with this motion, which apparently
   provides the basis for his due process argument.  In his excerpts
21  of record, Den Beste included an order entered on September 26,
   2011, which states that both sanctions motions were denied.  It is
22  stamped "docket #50."  Then, on September 28, 2011, the bankruptcy
   court entered the Sanctions Order, which granted Searle's motion
23  and denied Den Beste's.  It is also stamped "docket #50."
      Notably, this "first" sanctions order entered on September 26
24  is no longer on the docket.  Therefore, we conclude this "first"
   order was entered in error and was replaced with the operative
25  Sanctions Order entered on September 28, 2011.  From what we can tell, no
   "second" motion or OSC was ever filed.

26

27     [17]  We are also not persuaded by Den Beste's reliance on
   Musaelian v. Adams, 87 Cal. Rptr. 3d 475 (Cal. 2009).  There, the
   California Supreme Court held that an attorney who responds in pro
28                                                    (continued...)

-27-

1    Third, for the bankruptcy court to impose Rule 9011 sanctions

2  as to Searle, it first had to find that she violated the Rule.

3  Walters v. Webre (In re Webre), 88 B.R. 242, 245 (9th Cir. BAP

4  1988); Rule 9011(c).  The bankruptcy court made no such finding.

5  Finally, Den Beste's argument that because Searle was not awarded

6  fees means his grounds for sanctions were valid is a non sequitur.

7  Therefore, no sanctions as to Searle were mandatory as Den Beste

8  suggests.

9    Accordingly, we conclude the bankruptcy court did not abuse

10  its discretion when it granted Searle's motion for sanctions and

11  denied Den Beste's counter-motion for sanctions.

12  **C.   The appeal of the Stay Relief Order is moot (Appeal 11-1539).**

13    Den Beste also appeals the Stay Relief Order, contending that

14  Fiorani lacked standing to request relief from the automatic stay.

15  On April 5, 2012, Searle filed a Notice of Possible Mootness of

16  Appeals, contending that this appeal is moot in light of the

17  denial of Den Beste's discharge.  Den Beste's response failed to

18  adequately address the issue.  We dismiss this appeal as moot.

19    If a case becomes moot while pending on appeal, it must be

20  dismissed for lack of jurisdiction.  I.R.S. v. Pattullo (In re

21  Pattullo), 271 F.3d 898, 900 (9th Cir. 2001).  The test for

22  mootness of an appeal is whether we can grant a debtor any

23

24  _____

25    [17](...continued)
se to a filing abuse may not recover the sanction of attorney's
fees under CCP 128.7.  While similar to Civil Rule 11 (and Rule

26  9011), CCP 128.7 is a remedy under the California Code of Civil
Procedure applicable to procedural matters in the state courts of

27  California.  It is not a remedy under Civil Rule 11 or Rule 9011,
the procedural rule applicable in a federal court.  Thus,

28  Musaelian does not control this case.

-28-

effective relief in the event we decide to reverse the bankruptcy court's order granting a party's motion for relief from stay. Pilate v. Burrell (In re Burrell), 415 F.3d 994, 998 (9th Cir. 2005)("A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution."). If we cannot grant effective relief, we must dismiss the appeal as moot. In re Pattullo, 271 F.3d at 901.

On March 19, 2012, while this appeal was pending, the bankruptcy court entered a judgment denying Den Beste's discharge under § 727(a)(4)(A) and (a)(2)(B). As a result, the automatic stay terminated by operation of law at the time the discharge was denied. Section 362(c)(2)(C).[18] Den Beste did not seek or obtain a stay of the Stay Relief Order pending appeal. Accordingly, Den Beste no longer has the protection of the automatic stay from Fiorani's pursuit of her claims against him. Our reversal of the Stay Relief Order could not change that outcome.

Even if the bankruptcy court improperly granted Fiorani relief from stay to file her abuse action, the issuance of an opinion on this point now would be advisory. The Constitution forbids the issuance of advisory opinions by federal courts. U.S. Const., art. III; Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010); Haden v. Pelofsky, 212 F.3d 466, 469 (8th Cir.

---

[18]   Section 362(c)(2)(C) provides:

(c) Except as provided in subsections (d), (e), and (f) of this section—
. . . .
   (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
      (C) if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted or denied.

-29-

2000)(if a case is indeed moot the appellate court must refrain from reaching the merits because any opinion issued would be merely advisory and rest on hypothetical underpinnings).

Because the discharge order cannot be altered in any way in this proceeding, we cannot, at this juncture, provide Den Beste any effective legal relief.  Accordingly, we DISMISS this appeal as MOOT.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM the Dismissal Order, AFFIRM the Sanctions Order, and DISMISS as MOOT the Stay Relief Order.

-30-